UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NUMBER 1:25-cv-113-LLK

NATHANAEL F.[1] PLAINTIFF

v.

FRANK BISIGNANO,
Commissioner of Social Security DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff filed a Complaint seeking judicial review pursuant to 42 U.S.C. § 405(b), of the Final Decision of the Commissioner denying his claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. [DN 1].[2] Plaintiff's Fact and Law Summary is at DN 10, the Commissioner's responsive Fact and Law Summary is at DN 15, and no reply was filed. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to determine this case, with any subsequent appeal to be filed directly to the United States Court of Appeals for the Sixth Circuit. [DN 6]. The matter is now ripe for adjudication.

After examining the administrative record, the Administrative Law Judge's (ALJ's) Decision, the arguments of the parties, and the applicable authorities, the Court finds that Plaintiff's argument is unpersuasive, that the ALJ's Decision is supported by substantial evidence, and his findings comport with applicable law. Accordingly, the Court will AFFIRM the Commissioner's Final Decision and DISMISS Plaintiff's Complaint.

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this Report and Recommendation is shortened to first name and last initial.

[2] References to specific pages in the Court's Docket in this Memorandum Opinion will include the Docket Number and page number found in the red inked header at the top of the document.

## I. BACKGROUND

**Administrative History**. Plaintiff filed applications for DIB and SSI on January 18, 2023, alleging disability from April 15, 2019, at age 29 as a result of back pain, issues with standing/walking/sitting, osteoarthritis in lower spine, ruptured disc in back, scoliosis, pain in both knees and ankles, migraines, history of schizophrenia, bipolar, PTSD, generalized anxiety, and bone spurs in back. [DN 5] at 131. His claims were denied initially and upon reconsideration. Plaintiff requested a hearing before an ALJ which was granted. The telephonic hearing was conducted on April 4, 2024, before ALJ Candace McDaniel and with attorney Mary Burchett-Bower attending with Plaintiff. [DN 5] at 91. Also attending and testifying during the hearing was impartial vocational expert, William Kiger. *Id*. On August 9, 2024, the ALJ issued an unfavorable Decision finding that Plaintiff was not disabled within the meaning of the Act. [DN 5] at 72-84.

Plaintiff requested review of the ALJ's Decision by the Appeals Council. On June 16, 2025, the Appeals Council denied Plaintiff's request for review. [DN 5] at 7. At that point, the ALJ's Decision became the Final Decision of the Commissioner. 20 C.F.R. § 422.210(a). This Court will be reviewing the ALJ's Decision and the evidence that was contained within the administrative record at the time the ALJ rendered his unfavorable Decision. 42 U.S.C. § 405(g).

**The ALJ's Decision**. ALJ McDaniel denied Plaintiff's claims for DIB and SSI applying the five-step sequential evaluation process applicable in all Social Security disability cases. At Step One, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2022, and that he has not engaged in substantial gainful activity since April 15, 2019, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

At Step Two, the ALJ found that Plaintiff has the following severe impairments: lumbar degenerative disc disease, migraine headaches, attention-deficit/hyperactivity disorder ("ADHD"),

depressed bipolar disorder, and generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

As in any case that proceeds beyond Step Three, the ALJ must determine a claimant's residual functional capacity (RFC), which is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c). In making an RFC determination, the ALJ considers the record in its entirety including medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a)(3), 416.946(c). The ALJ found that, notwithstanding his impairments, Plaintiff retains the RFC to perform light work with certain limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can stand and/or walk for four hours during an eight-hour workday; he can occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds; and he can occasionally stoop, kneel, crouch, and crawl. He should avoid noise levels of four and five; avoid working in direct sunlight or around flashing or strobing lights; avoid concentrated exposure to fumes or odors; avoid concentrated exposure to vibration; and avoid all exposure to unprotected heights or operation of dangerous moving machinery. He can understand, remember, and carry out simple instructions. He can have occasional contact with supervisors and co-workers but no work that involves interaction with the public for task completion. With those limitations, he can maintain attention and concentration for two-hour segments over an eight-hour workday and tolerate routine changes in the workplace.

ALJ's Decision, [DN 5] at 77.

At Step Four, the ALJ made findings that Plaintiff has no past relevant work (20 CFR 404.1565 and 416.965). Accordingly, the ALJ's analysis proceeded to the last step.

At Step five, the ALJ found that Plaintiff was born on September 16, 1989, and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963); that he has at least a high school education (20 CFR 404.1564 and 416.964); that transferability of job skills is not an issue because Plaintiff does not have past relevant work (20 CFR 404.1568 and 416.968); and that considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a). Thus, the ALJ found that Plaintiff has not been under a disability, as defined in the Social Security Act, from April 15, 2019, through the date of the decision (20 CFR 404.1520(g) and 416.920(g)).

## II. STANDARD OF REVIEW

The task in reviewing the ALJ's findings is limited to determining whether they are supported by substantial evidence and made pursuant to proper legal standards. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F.App'x 516, 522 (6th Cir. 2008). The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). In reviewing the record as a whole, the Court may not "try the case de novo, nor resolve conflicts in

the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs*., 25 F.3d 284, 296 (6th Cir. 1994).

The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec*., 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the decision. *Id*. If it does, the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id*. As described by the Supreme Court, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec*., 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

**Plaintiff's Argument**. Plaintiff's sole argument in this case is that the ALJ erred in evaluating the medical opinion evidence. He posits that the rationale the ALJ provided and the evidence of record at the time of the decision do not support light RFC findings. [DN 10] at 2-4. In response, the Commissioner argues that the ALJ evaluated the opinion evidence consistent with the requirements of the regulations, and that substantial evidence supports the ALJ's Decision.

## III. DISCUSSION

**Plaintiff's Hearing Testimony**. At his hearing before ALJ McDaniel, Plaintiff described having a 12th grade education and a driver's license, but not having driven in three years. [DN 5] at 99. He had past work in the Army Reserves, as a welding machine operator, as a restaurant line cook, dishwasher and server in various restaurants, and as a material handler in an auto parts factory. [DN 5] at 99-102. Plaintiff testified to severe low back pain which required him to stay in bed all day except for bathroom and meal breaks. [DN 5] at 110. He has tried different approaches to relieve the back pain including applying heat and cold, a TENS unit, physical therapy, epidural steroid injections, and hydrocodone pain pills. *Id*. He testified that an MRI showed osteoarthritis, degeneration, and pinched nerves and resulted in referral to Dr. Cooper.[3] [DN 5] at 111. Additionally, Plaintiff had difficulty with hyperextension of his left leg and knee, and with migraine headaches which required taking rizatriptan at least twice per week. [DN 5] at 116.

Plaintiff contends that the ALJ erred in evaluating the medical opinion evidence in this case. Notably, state agency physician Dr. Howard Bronstein evaluated Plaintiff's DIB claim at the initial level and found that there was insufficient evidence to evaluate Plaintiff's physical impairments with a date last insured of March 31, 2022. [DN 5] at 114. State agency physician Dr. Kip Beard reviewed Plaintiff's SSI claim in March of 2023, and found him capable of a reduced range of light work. That is, the state agency physician found Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could stand, walk and/or sit for about 6 hours in an 8 hour workday; could frequently climb ramps, stairs, ladders ropes and scaffolds; could frequently stoop, kneel, crouch, and crawl with unlimited balancing; should avoid concentrated

[3] The hearing transcript at [DN 5] page 111 reads Dr. Cooper. However, the medical records appear to be from Dr. Christopher Cook, formerly with the Gilbert Graves Clinic, Western Kentucky Orthopedic and Neurosurgical Associates group. See [DN 5] at 911.

exposure to vibration and avoid all exposure to hazards. [DN 5] at 136-137. These findings were affirmed upon reconsideration by state agency physician Dr. Robert Culbertson. [DN 5] at 164-5. In adopting the state agency physicians' opinions as generally persuasive, the ALJ offered the following:

> The undersigned finds these opinions generally persuasive to the extent of their assessment of a light exertional RFC with additional limitations. Both opinions contain internal support with mention of the claimant's migraine headaches and lower back issues, with the latter demonstrating improvement with treatment (2A/7, 6A/3). In addition, the opinions appear consistent with the longitudinal record, which does reflect reports of back pain due to degenerative disc disease but also contains documentation of normal ROM, no ongoing use of an assistive device, steady balance and normal gait, and largely successful management of symptoms with injections and prescription medication (6F/3, 51; 7F/4; 8F/3; 11F/9; 15F/5; 16F/2, 18; 20F/3-5; 25F/4).
>
> * * *
>
> Based on the foregoing, the undersigned finds the claimant has the above RFC assessment which is supported by the claimant's lumbar degenerative disc disease, migraine headaches, and mental health diagnoses. The claimant's degenerative disc disease warrants a base light exertional level, with additional limits on standing and/or walking as well as postural limitations to avoid exacerbation of symptoms. To avoid triggering migraines, the undersigned has assigned certain environmental limitations involving noise, light, and fumes or odors. Finally, the claimant's mental impairments limit him to a range of unskilled work with restrictions on contact with others due to indications of social anxiety.

ALJ Decision, [DN 5] at 80, 82.

**Residual Functional Capacity**. In assessing an individual's RFC, the ALJ must consider the claimant's subjective allegations alongside medical records and physician opinions. 20 C.F.R. §§ 404.1529, 416.929, SSR 16-3p. A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings that show the existence of a medical impairment that could reasonably be expected to give rise to the pain or other symptoms alleged. *Id*. §§ 404.1529(a), 416.929(a). RFC is the ALJ's ultimate determination of what a claimant can still do despite their limitations, and the

ALJ is charged with determining a claimant's RFC "[b]ased on all the relevant evidence in [his] case record." 20 C.F.R. §§ 404.1545(a); 416.945(a). Thus, in making the RFC determination, the ALJ must necessarily evaluate the persuasiveness of the medical source statements and prior administrative findings in the record as well as assess the claimant's subjective allegations. 20 CFR §§ 404.1520c, 404.1529(a), 416.1520c, 416.1529(a). To support his RFC findings, the ALJ properly relied upon objective medical and other evidence in the record. The Decision indicates that the ALJ's RFC was prepared "[a]fter careful consideration of the entire record," and the Court notes that the RFC and symptom analysis constitutes some six pages of the thirteen-page Decision. [DN 5] at 77-82.

**The ALJ did not ignore Dr. Cook's findings**. Plaintiff takes issue with the ALJ finding the state agency physicians' opinions regarding physical limitations generally persuasive while failing to take into account evidence from Dr. Christopher Cook with Western Kentucky Orthopedic and Neurosurgical Associates showing limited range of motion in lumbar spine, positive straight leg raise, and paresthesia in the L5/S1 dermatomes. [DN 10] at 4. Plaintiff posits that the rationale provided by the ALJ and the evidence of record at the time of the ALJ decision do not support the ALJ's light RFC finding. Plaintiff's argument is that Dr. Cook's records—both before and after the state agency physicians' reviews—showed a more severe lumbar condition than is reflected in the state agency physicians' opinions and in the RFC for light work. Plaintiff notes the inconsistency between Dr. Cook's record documenting limited range of motion, but the ALJ cites to a Dr. Cook record indicating normal range of motion.[4] *Id*. Plaintiff further notes that the February 2024 x-ray ordered by Dr. Cook (almost a year after the state agency physicians' reviews) showed retrolisthesis of L5 on S1 with severe degenerative disc disease and discogenic

---

[4] Plaintiff's medical record from the January 3, 2023, New Patient Visit with Dr. Cook indicates "Normal ROM without limitation in lumbar spine." [DN 5] at 534.

changes, that Dr. Cook found Plaintiff had failed all conservative treatment therapies (activity modification, physical therapy, epidural steroid injections, prescription opiates, neuromodulator medication, and antispasmodic medication), and that Dr. Cook's recommendation for Plaintiff's disabling pain was a lumbar fusion.[5] *Id*. Dr. Cook concluded that Plaintiff suffered from daily disabling pain which affected his quality of life.[6] [DN 5] at 816.

Plaintiff bears the burden of proving a more restrictive RFC than found by the ALJ. *Dyson v. Comm'r of Soc. Sec*., 786 F. App'x, 586, 589 (6th Cir. 2019). Typically, a plaintiff may satisfy this burden by showing that either 1) a treating or other medical source opined limitations not contemplated by the ALJ's RFC and the ALJ erred in discounting the opinion; or 2) the ALJ improperly evaluated the limiting effects of pain and other subjective symptoms. Notably, Dr. Cook did not continue to treat Plaintiff once the lumbar fusion was declined by insurance,[7] as Dr. Cook soon thereafter relocated his practice out of state. [DN 5] at 921. And while Plaintiff's brief cites to the medical findings contained in Dr. Cook's records (some of which were generated after the state agency physicians' reviews), Dr. Cook did not provide a Medical Source Statement or otherwise assign functional limitations resulting from findings of limited range of motion, positive straight leg raise tests, and an x-ray showing severe degenerative disc disease. This Court's review of Dr. Cook's records is consistent with the ALJ's findings: there was evidence that showed

---

[5] Notably, the administrative record reflects that on April 10, 2024, insurance declined to approve the lumbar fusion surgery recommended by Dr. Cook until Plaintiff completed a course of PT and ceased smoking. [DN 5] at 15, 27, 917, 921.

[6] Notably, a February 5, 2024, record from Commonwealth Pain Associates indicates that Gabapentin 300mg and Hydrocodone 7.5 are effective at alleviating 80% of his pain for 5 hours, and that his average pain level is 3/10 with medication, 9/10 without medication. [DN 5] at 886-887. In contrast, Dr. Cook's February 8, 2024, record states that conservative treatments have failed, "including activity modification, physical therapy, epidural steroid injections, prescription opiate pain medication, prescription neuromodulator medication and prescription antispasmodic medication. Despite these treatments and therapies, he continues to have daily disabling pain which affects his quality of life." [DN 5] at 816.

[7] There was some discussion of referring Plaintiff to Dr. Strenge in Paducah KY for spine surgery, but Plaintiff indicated that is too far away. [DN 5] at 15, 921.

Plaintiff's lower back issues improved with treatment. There was indeed evidence of normal ROM, no ongoing use of an assistive device, steady balance and normal gait, and largely successful management of symptoms with injections and prescription medication as found by the ALJ. [DN 5] at 80. While there are records from Dr. Cook that were not in existence at the time of the state agency physicians' reviews, the ALJ did have the opportunity to review the record in its entirety. Dr. Cook did not assign any functional restrictions or limitations, and the Court finds no error in the ALJ's analysis pertaining to his records. As the Commissioner aptly notes, an ALJ is not required to discuss every piece of evidence in the record. *Showalter v. Kijakazi*, No. 22-5718, 2023 WL 2523304, at *3 (6th Cir. 2023). It is also notable that the state agency physicians' opinions were not adopted wholesale by the ALJ; giving Plaintiff the benefit of the doubt, the ALJ adopted limitations greater than those assessed by the state agency physicians. Where an ALJ adopts an RFC that is more restrictive than the state agency physicians' opinions, the ALJ's findings are generally found to be supported by substantial evidence in this circuit. *See Brooks v. Comm'r of Soc. Sec*, No. 20-cv-13246, 2022 WL 2163018, at *3 (E.D. Mich. 2022) (collecting cases).

**The ALJ properly evaluated the opinion of Dr. Turner**. On April 1, 2024, Dr. Andy Turner of the Graves Gilbert Clinic completed a five-page, fill-in-the-blank and check-the-box Physical Medical Source Statement discussing Plaintiff's physical limitations. [DN 5] at 879-883. The form noted diagnoses of degenerative disc disease at L5-S1 with retrolisthesis causing stabbing, burning pain radiating down both legs, supported by a September 2022 MRI Report which showed L5/S1 disc and nerve impingement. [DN 5] at 879. Dr. Turner assessed Plaintiff with limitations of walking one block or less; sitting and standing for 30 minutes at a time; periods of sitting/standing/walking for less than 2 hours in an 8-hour workday; job would need to accommodate shifting positions at will from sitting, standing and walking; job would need to

accommodate periods of walking every thirty minutes for five minutes at a time; job would need to accommodate 15-30 minute breaks every 1-2 hours; lifting/carrying less than 10 pounds occasionally and 10 pounds rarely; rarely climbing stairs and ladders and never twisting, stooping, bending, crouching, or squatting. [DN 5] at 880-881. Dr. Turner also found that Plaintiff would be off task for 25% or more of a typical work day, and absent from work more than 4 days per month due to his impairments. [DN 5] at 882.

The ALJ did not find Dr. Turner's opinion to be persuasive because it contained limited support and for its inconsistency with other medical records:

> The undersigned finds this opinion unpersuasive. To begin, the opinion contains limited support, citing the claimant's degenerative disc disease and medical imaging but otherwise relying on the claimant's subjective reports of symptoms and therapeutic interventions instead of clinical or diagnostic testing (24F/1). The opinion also appears at odds with recent medical records that depict improvement in the claimant's back symptoms with a "good regimen" of pain management including hydrocodone, gabapentin, and steroid injections. The claimant has generally been independent in ambulation without an assistive device. In early 2024 there is reference to prescribed back brace and walker, but this appeared to be related to the discussion about his impending back surgery, which the claimant reported has not yet occurred. That visit confirmed the claimant's right leg strength at 5/5 and let slightly reduced to 4/5. With those findings remaining the same at the May 2024 visit. (6F/3, 51; 7F/4; 8F/3; 11F/9; 15F/5; 16F/2, 18; 20F/3-5; 25F/4). Additionally, there has been no treatment focused on his arms or hands to support the limitation of rarely carrying ten pounds. Furthermore, the off-task limitation is a guestimate without benefit of any supporting findings.

ALJ's Decision, [DN 5] at 80-81.

**Supportability/Consistency Analysis**. Under the new regulations that apply to this case, 20 C.F.R. §§ 404.1520c and 416.920c, an ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." 404.1520c(a); 416.920c(a). Instead, the ALJ must "evaluate the persuasiveness of [the] medical opinions and prior administrative medical findings" using five factors, including the (1) supportability and (2) consistency of the opinions or

findings, the medical source's (3) relationship with the claimant and (4) specialization, as well as (5) "other factors" such as the "medical source's familiarity with the other evidence in a claim" and their "understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id.* §§ 404.1520c(a), (c); 416.920c(a), (c). Of these five factors "[t]he most important ... are supportability and consistency." *Id.* The supportability factor states that, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." *Id.* §§ 404.1520c(c)(1); 416.920c(c)(1). The consistency factor states that, "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." *Id.* §§ 404.1520c(c)(2); 416.920c(c)(2).

For these two factors, the ALJ is required to "articulate how [they] considered the medical opinions and prior administrative medical findings" and specifically "explain how [they] considered the supportability and consistency factors" in "determin[ing] how persuasive [they] find a medical source's medical opinions or administrative medical findings to be." *Id.* This "mandatory articulation requirement" has been said to "serve[ ] the same purposes as the good reasons requirement of the treating physician rule" because "[b]y requiring ALJs to articulate their analysis of the most important factors to consider ... the requirement permits meaningful judicial review" and "ensures that claimants will receive an explanation of why the ALJ found each medical opinion, including those of their treating physician, to be persuasive, partially persuasive, or not persuasive." *Lorraine R. v. Comm'r of Soc Sec. Admin.*, No. 3:20-cv-00396, 2022 WL 4232839, *4–*5 (S.D. Ohio Sept. 14, 2022).

Here, the ALJ complied with the regulatory requirements for assessing medical opinions. As for supportability, the ALJ deemed Dr. Turner's opinion unpersuasive because it included limited support for the limitations assessed and because it was based upon Plaintiff's subjective reports of symptoms and therapies instead of clinical or diagnostic testing. The assessment included direct quotes from Plaintiff regarding the frequency of pain as "all day," that physical therapy "made worse," and epidural steroid injections "helped some." [DN 5] at 879. The ALJ's determination that Dr. Turner's opinion was based upon Plaintiff's subjective reports was reasonable based upon these direct quotes, and also when Dr. Turner's treatment records are taken into account. Dr. Turner's records do not include details regarding the physical examination of Plaintiff's back (or any other area). Dr. Turner's records under the "Physical Exam" heading routinely note only that Plaintiff was WNWD, NAD (well-nourished, well-developed, in no apparent distress). (See for example, Dr. Turner's record dated June 18, 2024, at [DN 5] at 924.)

As for consistency, the ALJ's reasoning is supported by Dr. Cook's treatment records that indicate gabapentin and hydrocodone prescribed by pain specialists were "a good regimen for him, and he is able to control most of his pain. He is still wanting to put off/postpone any surgical intervention." [DN 5] at 734. A pain management record dated February of 2024, indicates that Plaintiff's pain is controlled to a level of "3/10" with medication and "9/10" without. Dr. Turner's disabling limitations assessment is inconsistent where relatively conservative treatments provide substantial (though not complete) relief. This Court's review of the record reveals that the ALJ properly evaluated the "consistency" factor in determining that Dr. Turner's work-disabling assessment was not consistent with other evidence. See *Adams v. Comm'r of Soc. Sec*, No. 23-3284, 2023 WL 6366106, at *3 (6th Cir. 2023) (conservative treatment, such as steroid injections

and pain medications, supported the ALJ's determination that the claimant did not have disabling limitations in sitting or standing).

Finally, as to the second means of challenging an ALJ's RFC findings, the Court finds no error in the ALJ's pain/symptom assessment. Consistent with the regulations, the ALJ evaluated Plaintiff's symptoms utilizing the two-step process outlined in 20 CFR § 404.1529, 416.929, and SSR 16-3p. An ALJ's pain / "credibility assessment must be accorded great weight and deference." *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017). In evaluating Plaintiff's symptoms, the ALJ made the following findings pertaining to his physical complaints:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the medical evidence does not always support the extent of the alleged limitations. For instance, at exams during the period under consideration, the claimant has demonstrated normal ROM of the lumbar spine "without limitation" along with "steady" balance and coordination, normal gait with no observed limp, and no use of an assistive device (6F/3, 51; 15F/5; 20F/3).

ALJ's Decision, [DN 5] at 79.

In this case, the ALJ's evaluation of the medical opinions is supported by substantial evidence, and the Plaintiff has identified no compelling reason for this Court to second-guess the ALJ's pain / credibility assessment. The ALJ's Decision includes a detailed discussion of Plaintiff's impairments, the medical and other evidence of record, and the ALJ's reasoning for either accepting or rejecting same. In addition, the ALJ considered the Plaintiff's testimony and third-party function report from Plaintiff's mother, but nonetheless concluded that the evidence of record did not support Plaintiff's allegations of incapacitating symptoms. The Court finds no error in the ALJ's assessment of the limitations contained within the RFC.

## IV. CONCLUSION AND ORDER

Having reviewed the medical records, the Plaintiff's testimony, the state agency findings and all other evidence in the administrative record, the undersigned finds that the ALJ's Decision stands solidly on substantial evidence. Most disability claims have medical and other evidence that could support findings either way; it is the ALJ's job to weigh that evidence and articulate the reasons for either accepting or rejecting it. "[A]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

Because Plaintiff's arguments are unpersuasive and the Administrative Law Judge's Decision is supported by substantial evidence, the Commissioner's final decision is hereby AFFIRMED, and Plaintiff's Complaint is DISMISSED.

September 28, 2026

**Lanny King, Magistrate Judge**
**United States District Court**